

**SIGNED this 2nd day of May, 2012**

_____
Marcia Phillips Parsons
**UNITED STATES BANKRUPTCY JUDGE**

_____

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>   WESLEY EVAN LEONARD,<br><br>               Debtor. | No. 11-52028<br>Chapter 7 |
| AUTOMOTIVE FINANCE CORPORATION,<br><br>      Plaintiff,<br><br>vs.<br><br>WESLEY EVAN LEONARD,<br><br>      Defendant. | Adv. Pro. No. 11-5073 |

### M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Dudley Cheadle, Esq.<br>2404 Crestmoor Road<br>Nashville, Tennessee 37215<br>*Attorney for Plaintiff* | Joseph B. Lyle, Esq.<br>Post Office Box 274<br>Bristol, Tennessee 37621<br>*Attorney for Defendant* |

**Marcia Phillips Parsons, United States Bankruptcy Judge.** In this adversary proceeding, Automotive Finance Corporation ("AFC") seeks a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6) arising out of the failure of the limited liability company of which the debtor Wesley Evan Leonard was a manager and a member to remit proceeds from the sale of vehicles financed by AFC under a floor plan financing agreement. Presently before the court is the Debtor's motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Bankruptcy Procedure 7012. Additionally, the Debtor seeks dismissal upon the basis that AFC is not the owner and holder of the underlying indebtedness. For the reasons discussed hereafter, the Debtor's motion to dismiss will be denied as to AFC's § 523(a)(6) claim and any standing contention, but granted as to AFC's § 523(a)(2)(A) and (a)(4) claims. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

I.

On August 31, 2011, the Debtor filed a voluntary petition for bankruptcy relief under chapter 7. Subsequently, on December 5, 2011, AFC timely commenced this adversary proceeding. In its complaint, AFC states that the Debtor on behalf of Leonard Motors, LLC ("Leonard Motors"), executed a dealer application on October 9, 2006, in order to obtain floor plan financing from AFC. On the same date, the Debtor also executed on behalf of Leonard Motors a "Demand Promissory Note and Security Agreement" ("Note"), which secured initial floor plan financing of $25,000, and granted AFC a security interest in substantially all of Leonard Motors' assets, including its inventory. In connection with the loan, the Debtor also signed a personal guarantee. Thereafter, between January 10, 2007, and March 2, 2011, the amounts advanced under the Note were gradually increased to $300,000, with the Debtor executing on behalf of Leonard Motors a series of amendments to the Note in order to document the increases. Each additional increase was secured by the grant of a security interest in the Note and included in the Debtor's guarantee.[1]

AFC alleges that under the terms of the Note Leonard Motors was obligated to hold the

---

[1] The pertinent documents–the dealer application, Note, and the majority of the amendments to the Note–were also executed on Leonard Motor's behalf by Trevor Joe Leonard, also a manager and/or member of Leonard Motors. Additionally, Trevor Leonard like the Debtor signed an Unconditional and Continuing Guaranty.

proceeds from the sale of vehicles financed by AFC "in trust" for the benefit of AFC and to then pay these proceeds to AFC. Additionally, AFC maintains that each time Leonard Motors requested credit under the Note in order to finance the purchase of a vehicle, it represented, "through or at the direction of" the Debtor, that it would pay the "trust funds" derived from the sale of such vehicle to AFC. According to AFC, notwithstanding these representations and the terms of the Note, Leonard Motors sold nine vehicles but failed to pay to AFC the proceeds from the sales, totaling $90,724.04. AFC adds that with respect to the sale of two of the vehicles Leonard Motors, "through or at the direction of" the Debtor, presented AFC with two checks that were returned for insufficient funds. AFC concludes that as of the Debtor's bankruptcy filing, Leonard Motors was in default under the Note for failure to pay all amounts due and owing. AFC seeks a determination that the amounts owing, along with attorney fees, costs and expenses, are excepted from the Debtor's bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(2)(A) for fraud, § 523(a)(4) as a defalcation while acting in a fiduciary capacity and embezzlement, and § 523(a)(6) for willful and malicious injury to property.

In his motion to dismiss, the Debtor seeks dismissal of all causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6), as incorporated by Federal Rule of Bankruptcy Procedure 7012(b), for failure to state a claim upon which relief may be granted. The Debtor also asserts in his motion that AFC does not have a claim against him because it is no longer the owner and holder of the Note and the underlying indebtedness, although the Debtor cites no particular procedural rule or authority. In its response to the motion to dismiss, AFC denies that it does not hold a claim against the Debtor or that the complaint fails to state a claim for any of the cited bases for relief.

II.

Federal Rule of Civil Procedure 12(b)(6), applicable in adversary proceedings through Federal Rule of Bankruptcy Procedure 7012, provides that complaints may be dismissed for "failure to state a claim on which relief can be granted." As explained by the Sixth Circuit Court of Appeals:

> The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions or legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be

3

>presumed to be true, and reasonable inferences must be made in favor of the non-moving party. *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir.1983); 2 Moore's Federal Practice § 12.34[1][b] (Matthew Bender 3d ed. 2003). The court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). To survive a motion to dismiss, the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Supreme Court of the United States has further stated that:

>To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (internal citations omitted). Moreover, "'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). This court will examine each of the claims for relief set forth in the complaint and determine if the required plausibility standard is met. First, however, the court will address whether the complaint should be dismissed because AFC allegedly lacks a claim against the Debtor.

### III.

The Debtor argues that AFC does not have a claim against him as a matter of law because the loan documents, including the Note, copies of which are attached to the complaint as Exhibits 1 through 4, state on their face that AFC has sold the obligation owed to it by Leonard Motors and guaranteed by the Debtor. Specifically, each page of these documents includes the following legend: "This receivable has been sold to AFC Funding Corporation and an interest therein has been granted to Harris Nesbitt Corp. as agent." The Debtor contends that because AFC is not the owner and holder of the Note the complaint must be dismissed.

Case 2:11-ap-05073-MPP    Doc 11    Filed 05/02/12    Entered 05/02/12 16:41:33    Desc
Main Document - Memorandum/Opinion    Page 5 of 17

In response, AFC does not deny that it has sold the right to receive payment from Leonard Motors, the "Leonard Motors Receivables," to AFC Funding Corporation. AFC explains that the legend on the loan documents refers to a "conduit financing transaction between AFC and AFC Funding Corporation," with the latter entity being "wholly owned by AFC and . . . formed for the purpose of purchasing finance receivables from AFC and selling undivided participation interest in the resulting pool of finance receivables, commonly referred to as a securitization pool, to a bank conduit facility on a revolving basis." According to AFC, this transaction does not affect its ability to bring this action because the receivables purchase agreement designates AFC as servicer of the receivables, including the Leonard Motors Receivables, and as a servicer it is a party in interest under Federal Rule of Civil Procedure 17 with standing to bring this action. These factual averments are supported by the affidavit of James E. Money II, the treasurer of AFC Funding Corporation. Mr. Money also states in his affidavit that AFC Funding Corporation "authorizes" the continuation of this adversary proceeding and "agrees to be bound by the result."

For purposes of § 523(a)(2)(a), (a)(4), and (a)(6), the party entitled to bring a nondischargeability action is "the creditor to whom such debt is owed." *See* 11 U.S.C. § 523(c)(1); *see also* Fed. R. Bankr. P. 4007(a) ("A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."). As adversary proceedings, nondischargeability actions are governed by Federal Rule of Bankruptcy Procedure 7017, which incorporates Federal Rule of Civil Procedure 17. *See* Fed. R. Bankr. P. 7001 ("An adversary proceeding is governed by the rules of this Part VII."). Rule 17(a) states that "[a]n action must be prosecuted in the name of the real party in interest." As a general rule, "the 'real party in interest' is the one who, under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *In re Woodberry*, 383 B.R. 373, 379 (Bankr. D.S.C. 2008) (quoting *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983)). The Note in the present case provides that it is governed by the substantive law of the state of Indiana. Under Indiana law, the person or entity entitled to enforce an instrument includes the "holder" of the instrument. *See* Ind. Code § 26-1-3.1-301(1). "'Holder' means: (A) the person in possession of a negotiable instrument that is payable either to bearer or to an identified person if the identified person is in possession of the instrument . . . ." Ind. Code § 26-1-1-201(20).

Applied to the present case, the legend inscribed on the Note raises doubt as to whether AFC is in fact the holder of the underlying instrument such that it is the real party in interest. However, Federal Rule of Civil Procedure 17(a)(3) states that:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Thus, under this provision, even if AFC is not a real party in interest, AFC Funding Corporation, the alleged real party in interest, may "ratify" this action and thereby allow it to continue. "A proper ratification under Rule 17(a) requires that the ratifying party (1) authorize continuation of the action and (2) agree to be bound by its result." *Icon Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 478 (3d Cir. 1987). The affidavit of Mr. Money on behalf of AFC Funding Corporation expressly provides both of these requirements. Further, the Debtor has not objected to the proposed ratification by AFC Funding Corporation. Accordingly, the court concludes that a sufficient basis for the contention that AFC is the real party in interest under Rule 17(a) has been alleged.[2]

---

[2] As to AFC's alternative servicer argument, no copy of the receivables purchase agreement that allegedly designates AFC as servicer of the receivables was tendered to the court. Thus, the court is unable to confirm that AFC is a servicer or examine what rights as servicer were given to AFC. Absent this information, the court is unable to ascertain whether AFC is a proper party based on the servicer argument, but notes that some courts have recognized the ability of a servicer to bring an action on behalf of the holder of a note. *See, e.g., Greer v. O'Dell*, 305 F.3d 1297, 1302-03 (11th Cir. 2002); *CWCapital Asset Mgmt., LLC v. Chicago Props., LLC*, 610 F.3d 497, 500-02 (7th Cir. 2010).

In addition to the servicer and ratification arguments, AFC also asserts in its response that even though it sold the Leonard Motors Receivables to AFC Funding Corporation, it retained all other rights under the Leonard Motors loan documents such that it remains a real party in interest. Because of the conclusion as set forth in the body of this opinion that a sufficient basis for standing has been otherwise alleged, it is not necessary for the court to address this issue.

IV.

A. <u>The 11 U.S.C. § 523(a)(2)(A) Claim</u>

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." As explained by the Sixth Circuit:

> In order for a debt to be nondischargeable under this provision, the creditor must prove: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss.

*Rembert v. AT&T Univ. Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

The Debtor argues in his brief that the complaint sets forth mere conclusory allegations with respect to each of these elements and fails to plead fraud with particularity. Specifically as to the first *Rembert* element, the Debtor asserts that AFC fails to sufficiently allege any material misrepresentation that he knowingly made at the time of each credit advance under the Note. The Debtor further argues that any alleged misrepresentations by Leonard Motors can not be imputed to him personally simply because he is a member of the company and a guarantor of the debt.

As to the latter contention, the Debtor is correct as a general proposition that fraud by a company of which he is a member or for whom he has guaranteed a debt may not be imputed to him for purposes of § 523(a)(2)(A). *See Porter Capital Corp. v. Campbell (In re Campbell)*, No. 08-5001, 2008 WL 4682785, *4-5 (Bankr. E.D. Tenn. Oct. 21, 2008). On the other hand, the Debtor may be held personally liable for the debts of Leonard Motors to the extent of his participation in tortious acts that resulted in harm to AFC. *See Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 125 (6th Cir. 1985); *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox),* 370 B.R. 104, 113 (B.A.P. 6th Cir. 2007) (holding under Michigan and Ohio law, respectively, that a corporate officer may be personally liable for corporation's tort if he was personally involved in tort's commission); *Cooper v. Cordova Sand & Gravel Co.*, 485 S.W.2d 261, 271-72 (Tenn. App. 1971) (same under Tennessee law). In addition to the member and guarantor allegations of the complaint, it is also alleged that the Debtor was a manager of Leonard Motors, and

7

that "[a]t all times relevant herein, [the Debtor] was engaged in the active, substantial, and continuing personal participation in the management and day to day operations of Leonard Motors." Also, every reference in the complaint to a tortious act by Leonard Motors recites that the company acted "through and at direction of [the Debtor]." Considered in their entirety, the allegations in the complaint are sufficient to state a claim for the Debtor's personal participation in the alleged fraud.

With respect to the Debtor's argument that the complaint sets forth only conclusory allegations of fraud and is therefore deficient the court must agree. The misrepresentations alleged in the complaint are that Leonard Motors, through the Debtor, falsely represented: (1) in the Note and at the time of each advance that it would hold proceeds derived from the sale of vehicles and pay them to AFC; and (2) that Leonard Motors had sufficient funds to cover two checks it presented to AFC in payment of two vehicles. No additional information regarding these alleged misrepresentations is set forth in the complaint. Because of the lack of detail, it is unclear whether AFC is contending that oral misrepresentations were made, or whether AFC is simply referring to the express representation of payment in the Note and its amendments, and to some implicit representation by the act of presenting the checks. Both scenarios are problematic.

Under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b), incorporated by Fed. R. Bankr. P. 7009. One requirement of this rule is that "the plaintiff must, at a minimum, allege the time, place and content of the misrepresentations; the defendant's fraudulent intent; the fraudulent scheme; and the injury resulting from the fraud." *Power & Telephone Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006). The purpose of this procedural requirement, in part, "is to alert defendants 'as to the particulars of their alleged misconduct' so that they may respond." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007)). Thus, to the extent that AFC's false representation claim is based on any particular oral misrepresentations, the complaint is deficient.

With respect to express representations of repayment in the Note and its amendments, "[a] mere promise to repay, and nothing more, does not rise to the level of a representation under § 523(a)(2)." *Williams v. White (In re White)*, 412 B.R. 860, 866 (Bankr. W.D. Va. 2009); *see also*

8

*Bartson v. Marroquin (In re Marroquin)*, 441 B.R. 586, 593 (Bankr. N.D. Ohio 2010) ("For purposes of § 523(a)(2)(A), the mere breach of a promise to pay does not establish the existence of an intent to defraud.  Otherwise, any breach of contract would be a nondischargeable debt."); *Giansante & Cobb, LLC v. Singh (In re Singh)*, 433 B.R. 139, 163 (Bankr. E.D. Pa. 2010) ("It is well established that 'a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A).'").

Similarly, the issuance of an insufficient funds check is not enough to establish nondischargeability under § 523(a)(2)(A).  *See McAdams, Inc. v. Childers (In re Childers)*, 311 B.R. 232, 236 (Bankr. E.D. Wis. 2004); *Greater Rockford Auto Auction, Inc. v. Goldstein (In re Goldstein)*, No. 09-A-96105, 2010 WL 5256664, *3 (Bankr. N.D. Ill. Dec. 17, 2010).  As previously stated by this court:

> [T]he mere issuance of a worthless check, even with knowledge that funds are not available in the account to cover the check, does not constitute a prima facie case of fraud, misrepresentation or false pretenses sufficient for nondischargeability under § 523(a)(2)(A).  *See McAdams, Inc. v. Childers (In re Childers)*, 311 B.R. 232, 238 (Bankr. E.D. Wis.2004).  This is because "a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false.'"  *Williams v. United States*, 458 U.S. 279, 284, 102 S. Ct. 3088 (1982).  "Since a check does not make any representation, it cannot make any misrepresentation."  *Stewart v. East Tenn. Title Ins. Agency, Inc. (In re Union Sec. Mortgage Co.)*, 25 F.3d 338, 341 (6th Cir.1994) (reversing district court's holding that delivery of dishonored check was in and of itself fraudulent).  To set forth a claim under § 523(a)(2)(A) based on a worthless check, some representation that there are sufficient funds available to cover the check must be made at the time the check is issued.  *Union Nat'l Bank & Trust Co. of Souderton v. Guest (In re Guest)*, 193 B.R. 745, 748 (Bankr. E.D. Pa.1996) (citing *In re Metcalf*, 25 F.3d 134 (6th Cir.1994) (unpublished table opinion)).  *See also Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 960 (Bankr. N.D. Ill.1995) ("[I]n the absence of a positive statement regarding the sufficiency of the bank account, Bryson's issuance of the checks to Banner does not constitute a false pretense or false representation within the meaning of § 523(a)(2)(A)."); *Heinold Commodities & Secs., Inc. v. Hunt (In re Hunt)*, 30 B.R. 425, 438 (M.D. Tenn.1983) (creditor cannot rely solely on existence of worthless check, but there must be some additional proof in connection with the issuance of check to establish a misrepresentation).

*Spa Cover, Inc. v. Hatley (In re Hatley)*, No. 09-5053, 2009 WL 5205385, *3 (Bankr. E.D. Tenn. Dec. 23, 2009).

Of course, a promise to pay is actionable "if a complainant could prove that debtor made knowingly false promises of future performance with the intent to defraud." *Bohannon v. Horton (In re Horton)*, 372 B.R. 349, 357 n.8 (Bankr. W.D. Ky. 2007); *see also Davis v. Olson (In re Olson)*, 454 B.R. 466, 472 (Bankr. W.D. Mo. 2011) ("A promise to pay a debt in the future is not a misrepresentation merely because the debtor fails to do so; the creditor must prove that the debtor, when he said he would pay the debt, had no intention of doing so."). However, other than the sale of the nine vehicles without remittance of the proceeds and the two NSF checks, there are no facts alleged in the complaint which suggest that the Debtor, individually or through Leonard Motors, acted with the intent to defraud AFC or made representations of payment at the time of the loans in question with no intent of repayment. To the contrary, the increases in the loan amounts from $25,000 to $300,000 over a four-year period appear to indicate that the parties had a successful business relationship for some time, presumably characterized by successful loan repayments when vehicles were sold, which repayments prompted additional loan advances. The complaint does not offer any factual indication, even circumstantial, which would support the claim that what initially appears to have been a good faith and kept promise to pay at some point turned fraudulent. The complaint does not indicate when Leonard Motors sold the nine vehicles in question, although the two NSF checks were dated July 18, 2011, and July 28, 2011, less than six weeks before the Debtor filed for bankruptcy relief when presumably he and Leonard Motors were already sustaining financial difficulty. Granted, the proximity to the timing of the bankruptcy filing does not preclude fraud. But when this fact is combined with the absence of any other allegation of fraud other than the failure to remit and the two bad checks, the court is unable to conclude that AFC's fraud claim is plausible on its face as required by *Iqbal*. *See Iqbal*, 556 U.S. at 678. Because of this deficiency, AFC's § 523(a)(2)(A) claim must be dismissed.

B. The 11 U.S.C. § 523(a)(4) Claim

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In its complaint, AFC alleges that the Debtor's misconduct falls within two of these categories: (1) defalcation while acting in a fiduciary capacity; and (2) embezzlement. With respect to the former, AFC alleges that the Note created an express trust in the proceeds from the sale of vehicles financed

by AFC and consequently a fiduciary relationship, with Leonard Motors as the trustee and AFC as the beneficiary, which relationship was breached by the Debtor's fraudulent misappropriation and failure to properly account for the trust funds. Regarding the latter, the embezzlement claim, AFC alleges that the Debtor converted the trust funds and appropriated them for his own use or benefit with fraudulent intent.

In his motion to dismiss, the Debtor denies that the complaint states a claim for relief as to either of the two § 523(a)(4) claims. According to the Debtor, the Note does not create an express trust, and alternatively, even if a fiduciary relationship existed between AFC and Leonard Motors, it can not be imputed to him. As to AFC's embezzlement claim, the Debtor asserts that the alleged facts do not indicate that AFC entrusted its property to him, and therefore, even if the facts as alleged in the complaint are true, they do not constitute embezzlement under § 523(a)(4). Each of AFC's § 523(a)(4) claims will be examined to determine its sufficiency, beginning with "defalcation while acting in a fiduciary capacity" and then embezzlement.

The Sixth Circuit has explained that in order to find a debt nondischargeable under § 523(a)(4) as a defalcation, proof by a preponderance of the evidence must establish "(1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Bd. of Trustees of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007). The fiduciary relationship required by this provision is narrower than in some contexts; an express or technical trust relationship is required. *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997)). Consequently, whether a fiduciary relationship has been created is determined by federal law, although courts look to state law in ascertaining whether an express or technical trust has been created. *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390-91 (6th Cir. 2005). Moreover, while the Sixth Circuit has defined "defalcation" as not only a misappropriation of trust funds, but also a failure to account for such funds, *see In re Bucci*, 493 F.3d at 639, it has cautioned that "there is no such thing as 'defalcation per se' and instead the debtor must have been objectively reckless in failing to properly account for or allocate funds." *Shamrock Floorcovering Servs., Inc. v. Patel (In re Patel)*, 565 F.3d 963, 970 (6th Cir. 2009).

As to the existence of an express or technical trust in the present case, the only trust language

11

in the Note is in section 4.0 entitled "Sales of Purchase Money Inventory," which states in its last sentence the following:

> Upon the sale of any item of Purchase Money Inventory, [Leonard Motors] shall hold the amount received from the disposition of inventory in Trust for the benefit of AFC and [Leonard Motors] shall pay to AFC . . . an amount equal to the unpaid balance of the Purchase Money Inventory Obligations and Obligations relating to such Purchase Money Inventory.

According to Indiana state law:

> It is essential to the creation of a trust that the declaration must make reasonably certain its material terms, and that these terms include, first, the subject-matter or property embraced with the trust; second, the beneficiaries or persons in whose behalf the trust is created; third, the nature and quantity of the interests which they are to have; and, fourth, the manner in which the trust is to be performed. If any of these necessary elements is not described with certainty, no trust is created.

*Pavy v. Peoples Bank & Trust Co*, 195 N.E.2d 862, 867 (Ind. App. 1964) (quoting *Wagner v. Clauson,* 78 N.E.2d 203, 207, 3 A.L.R.2d 672 (Ill. 1948)).

Applying these four requirements to the Note in the present case, it would appear that both of the first two requirements are met. The subject matter of the alleged trust is " the amount received from the disposition of inventory," while the beneficiary of the trust is identified as AFC. Less clear, however, is whether the remaining two elements are present. The "nature and quantity" of AFC's interest is not described; nor is the "manner in which the trust is to be performed." The only arguable indication of the latter is the requirement set forth in section 2.6 of the Note which directs the dealer to pay AFC on the earlier of (1) within 48 hours after the sale of a vehicle financed by AFC, or (2) the curtailment date, which is defined in section 1.5 of the Note as the date when all obligations relating to a financed vehicle become due. With the third element of a trust absent, and the fourth only marginally described, it would appear that the Note fails to create an express trust under Indiana law.

The one decision by a court considering this issue under Indiana law in the context of virtually identical language has reached the same conclusion. *See Dealer Servs. Corp. v. Goldstein (In re Goldstein)*, No. 09-A-96122, 2011 WL 5240335, *1-2 (Bankr. N.D. Ill. Oct. 31, 2011) (denying creditor's motion for summary judgment and dismissing creditor's § 523(a)(4) cause of action *sua sponte*). In reaching this result, the *Goldstein* court first observed that creditors cannot

12

"create a fiduciary duty for the purposes of § 523(a)(4) simply by throwing the word 'trust' into a loan or security document." *Id*. at *1. The bankruptcy court also referenced the Supreme Court's decision in *Davis v. Aetna*, 293 U.S. 328, 55 S. Ct. 151 (1934), wherein the Court rejected the contention that an auto dealer financing arrangement which included a "trust receipt" obligating the dealer to hold the car as property of the creditor created a trust arrangement for purposes of §523(a)(4)'s predecessor. *In re Goldstein*, 2011 WL 5240335, *2. As explained by the court in *Goldstein*, "the Supreme Court made clear that only a true trust or similar relationship will create a 'fiduciary' relationship for purposes of nondischargeability." *Id.* (citing *Davis v. Aetna*, 293 U.S. at 334 ("The substance of the transaction is this, and nothing more, that the mortagor, a debtor, has bound himself by covenant not to sell the mortgaged chattel without the mortgagee's approval. The resulting obligation is not turned into one arising from a trust because the parties to one of the documents have chosen to speak of it as a trust.")). The *Goldstein* court also noted that although the state of Indiana has codified its trust law, the statutory scheme expressly excludes "security instrument and creditor arrangements," *see* Ind. Code 30-4-1-1(c)(3), which exclusion the court construed as demonstrating a public policy to avoid placing a heightened fiduciary duty on debtors. *Id*. at *4. Lastly, and most persuasively, the bankruptcy court in *Goldstein* explained:

> The fundamental problem with the [creditor's] argument, and the reason why a debtor will almost never be a fiduciary towards a secured creditor based solely on that relationship, is that the Debtor held more than "bare" legal title in the collateral- both the vehicles and the proceeds of those vehicles. [The secured creditor] had certain rights in the collateral, including the right to collect or enforce its debt against the collateral, but until [the creditor] exercised those remedies it was still the Debtor who owned the collateral, and owned it for his own sake.

*Id*. at *2.

The overwhelming majority of courts considering similar contract language in floor plan financing agreements under other states' trust laws have concluded that express trusts for purposes of § 523(a)(4) were not created. *See, e.g., Electrolux Fin. Corp. v. Grant*, 325 B.R. 728, 734 (Bankr. W.D. Ky. 2005) (holding under Kentucky law that a statement in a security agreement that the proceeds are to be held "in trust" did not turn the parties' contractual obligation into a fiduciary relationship under § 523(a)(4)); *Bombardier Credit, Inc. v. Theis (In re Theis)*, 109 B.R. 474, 475 (Bankr. M.D. Fla. 1989) ("majority view . . . is that a security agreement does not create a technical

13

or expressed trust"); *Ford Motor Credit Co. v. Gallaudet (In re Gallaudet)*, 46 B.R. 918, 925 (Bankr. D. Vt. 1985) ("The fact that a commercial agreement contains the word 'trust' does not make the agreement a trust agreement nor does it create a fiduciary relationship. . . . It is the character of the debt relationship and not its form that determines whether a fiduciary 'trust' relationship exists." (citations omitted)); *Matter of Graham,* 7 B.R. 5,7 (Bankr. Nev. 1980) ("A trust clause inserted in a document which sets up a debtor-creditor relationship in an effort to assure the debtor's performance of its obligation does not create a trust."); *see also* Ann K. Wooster, Annotation, *Who is Acting in "Fiduciary Capacity" Within Meaning of Fraud or Defalcation Discharge Exception in Bankruptcy*, 15 A.L.R. Fed. 2d 337 (2006); *but see Dealer Servs. Corp. v. Erb (In re Erb)*, 453 B.R. 914, 919 (Bankr. W.D. Wis. 2011) (recognizing under Wisconsin law based on similar contractual language that a trust may have been created, but finding that the creditor failed to establish that sale proceeds ever existed which could be held in trust).

A limited number of courts have found an express trust for purposes of § 523(a)(4) where trust language similar to that in the present case was combined with contractual language requiring the dealer to segregate the trust funds from its other funds. *See Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 495-96, 500 (4th Cir. 2008); *Chrysler Credit Corp. v. Perry Chrysler Plymouth*, 783 F.2d 480, 484 (5th Cir. 1986); *Inland Bank & Trust v. Chachula (In re Chachula)*, No. 11 A 00073, 2011 WL 2551187, *2 (Bankr. N.D. Ill. June 23, 2011); Hon. William F. Stone, Jr., *Saved by the Draftsmen: Floor Plan Financier Prevails on Fiduciary Defalcation Exception to Discharge*, 2009 No. 1 Norton Bankr. L. Adviser 1 (discussing the broadening of the fiduciary dischargeability exception into the commercial context, but stating that "[o]ne principle that does emerge . . . is that even an agreement that purports to make the debtor a trustee for the benefit of his creditor is less likely to be given effect in bankruptcy if it fails to require an express segregation of funds from the debtor's own funds"); *but see First Nat'l Bank of Wichita Falls v. Parr. (In re Parr)*, 347 B.R. 561, 565 (Bankr. N.D. Tex. 2006) (covenant in floor-plan loan agreement for the debtor to segregate the funds did not rise to the level of a trust agreement). The Note in the present case contains no requirement that the sale proceeds be segregated from Leonard Motors' other assets.

To support its argument that an express trust was created in the present case, AFC cites the one case which agrees with it under analogous facts, *In re Erb*, 453 B.R. 914. *Cf. Ford Motor Credit*

*Co. v. Marinko (In re Marinko)*, 148 B.R. 846, 850-51 (Bankr. N.D. Ohio 1992) (finding a debt nondischargeable under § 523(a)(4) when debtor failed to remit sales proceeds which were to be held in trust for the benefit of the floor plan creditor, although pertinent trust language not described in the opinion). Arguably, the conclusion in *Erb* that the note language therein was sufficient to constitute an express trust was mere *dictum*, since the court otherwise found that no actual trust existed because there was no proof that the debtor had sold any vehicles from which sale proceeds could be derived. *Id.* at 920. Moreover, unlike the present case which is governed by Indiana law, the outcome in *Erb* would appear from its facts to turn on the state law of Wisconsin, although there was no indication in *Erb* that the court was looking to state law in its analysis of the trust issue. Regardless of whether *Erb* is distinguishable from the present case, this court respectfully finds it unpersuasive, for the reasons previously stated. Because of the absence of an express or technical trust, the complaint in the present case fails to state a nondischargeability claim under § 523(a)(4) for defalcation while acting in a fiduciary capacity.

Turning now to the embezzlement allegation, the Sixth Circuit Court of Appeals defines embezzlement for purposes of §523(a)(4) as:

> the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.

*Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996) (internal citations omitted). Though evident from the Sixth Circuit's definition, "[t]o constitute embezzlement, the fraudulent appropriation must be 'of another's property.'" *Banco Popular, N.A. v. Rodriguez (In re Rodriguez)*, No. 06-3467, 2007 WL 543750, *5 (Bankr. S.D. Tex. Feb. 15, 2007); *see also Anzalone v. Dulgerian (In re Dulgerian)*, 388 B.R. 142, 151 (Bankr. E.D. Pa. 2008) ("One cannot embezzle one's own property."). Because of this elemental requirement, most courts have concluded that debtor can not embezzle his own property for purposes of a § 523(a)(4) embezzlement action, even if a creditor has a security interest in that property. *See First Nat'l Bank of Fayetteville v. Phillips (In re Phillips)*, 882 F.2d 302, 305 (8th Cir. 1989); *Mutual Mgmt. Servs., Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 756 (Bankr. N.D. Ill. 2010); *Morganroth & Morganroth, PLLC v. Stollman (In re Stollman)*, 404 B.R. 244, 272 (Bankr. E.D. Mich. 2009) (collecting various cases);

15

*The Bank of Castile v. Kjoller (In re Kjoller)*, 395 B.R. 845, 851 (Bankr. W.D.N.Y. 2008); *Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 333 (Bankr. N.D. Ind. 2006); *Everwed Co. v. Ayers (In re Ayers)*, 25 B.R. 762, 774 (Bankr. M.D. Tenn. 1982); *In re Rodriguez*, 2007 WL 543750, at *5-6 (defining the majority approach); *but see GMAC v. Cline*, No. 4:07cv2576, 2008 WL 2740777, *5 (N.D. Ohio July 3, 2008); *Jones v. Hall (In re Hall)*, 295 B.R. 877, 882 (Bankr. W.D. Ark. 2003) (reaching contrary conclusion). In the present case, title to the vehicles in question, as well as their proceeds, belonged to Leonard Motors rather than the Debtor but the principle remains the same: a creditor with a mere security interest in property cannot maintain a claim for embezzlement. Because this is not a situation where a creditor has entrusted its own property to a debtor as contemplated by § 523(a)(4), AFC's embezzlement cause of action must be dismissed.

C.  The 11 U.S.C. § 523(a)(6) Claim

Under § 523(a)(6), a debt is nondischargeable if it arises out of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Regarding the willfulness requirement, the Supreme Court has stated that "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974 (1998). In turn, the Sixth Circuit Court of Appeals has interpreted *Geiger* to mean "that unless 'the actor desires to cause consequences of his act, or believes that the consequences are substantially certain to result from it,' . . . he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999).

The second element of § 523(a)(6), that the injury be malicious in addition to willful, "means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). Stated differently, "[t]here must also be a consciousness of wrongdoing. . . . It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious under § 523(a)(6)." *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001) (citations omitted).

In his motion to dismiss, the Debtor asserts that AFC's allegations do not establish the

16

requisite intentional injury. According to the Debtor, this is a case of mere breach of contract, failure to remit proceeds from the sale of vehicles, which is nonactionable under § 523(a)(6). The court disagrees with the Debtor's assessment of the complaint. AFC alleges more than breach of contract. AFC alleges that Leonard Motors, through or at the direction of the Debtor, intentionally did not pay AFC the sales proceeds despite knowledge of its security interest in the proceeds and that the Debtor knew that injury was substantially certain to occur. AFC also alleges that the Debtor "appropriated" and "converted" the sales proceeds, "with fraudulent intent," "for his own use or benefit," and that the wrongful acts were "without just cause or excuse." It is well settled that the conversion of a secured creditor's collateral may constitute willful and malicious injury under § 523(a)(6).[3] *See, e.g.*, *In re Erb*, 453 B.R. at 920; *Automotive Fin. Corp. v. Rigoroso (In re Rigoroso)*, 453 B.R. 612, 615-16 (Bankr. D.S.C. 2011); *CMEA Title Agency, Inc. v. Little (In re Little)*, 335 B.R. 376, 386-87 (Bankr. N.D. Ohio 2005); *In re Jenkins*, 330 B.R. 625, 630 (Bankr. E.D. Tenn. 2005). Because the complaint sufficiently alleges a claim for relief under § 523(a)(6), the Debtor's motion to dismiss on this basis must be denied.

V.

In accordance with the foregoing, the court will enter an order granting the Debtor's motion to dismiss AFC's § 523(a)(2)(A) and (a)(4) claims and denying the Debtor's motion to dismiss AFC's § 523(a)(6) claim, along with the Debtor's standing argument.

# # #

---

[3] Under Tennessee law, "[c]onversion is 'the appropriation of property to the party's own use and benefit, by the exercise of dominion over it, in defiance of the plaintiff's right.'" *Brandt v. Bib Enters., Ltd.*, 986 S.W.2d 586, 595 (Tenn. App. 1998) (*quoting Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. App. 1977)).